Good morning, ladies and gentlemen, and thank you for being here. Thank you to Mr. O'Connell, who has flown in from D.C. And I thank the clerk of the court for reminding us, since the briefs were in this case were filed in about five, more than about four years ago, to update the court with regarding to new law. And I think new law answers the questions of legal pressing cases in this case. Who is Mr. Wang? Well, we could say Mr. Wang is Mr. Hu, as in Hu v. Holder. So I would ask the Department of Justice how they would distinguish the Hu v. Holder case versus Mr. Wang. This hasn't been done yet in the brief, so I'd like to give Mr. O'Connell an opportunity to respond and then discuss past persecution and well-founded fear, which I think we can find on the record. So, with that, I'd like to turn it over to Mr. O'Connell, if that's right. I'm sorry. Are you the appellant? Yes, for Mr. Wang. Right. And that's the end of your argument? No, I just want to save time for rebuttal, Your Honor. You know, rebuttal really is responding to what he says. If you'd like to make your argument first, why don't you make your argument first, and then we'll hear from him. Yes. The reason I was planning to do it this way is because there has been no response from OAL on how they would distinguish Hu v. Holder. Well, why don't you lay out your argument, and then we'll make sure you do save enough time for rebuttal. Oh, thank you so much. I always find myself running out of time, so. Well, no, we'll make sure you get enough time. Thank you. Okay, so Mr. Hu and Mr. Wang are one and the same in that they're both gentlemen from the People's Republic of China. Mr. Hu was protesting the government's corruption in a labor situation where he worked in a factory. And Mr. Wang is a farmer protesting the same thing. And they were both arrested while peacefully protesting. Their arrests were after trying to seek redress through written appeals to their government agencies, going up the chain of command, their chain of authority. And they were both found by the immigration judge not to be credible and not to have been arrested based on political opinion, not to have been persecuted because of political opinion, that there was no central, that political opinion was not a central reason. However, as found in the Ninth Circuit here in 2011, they said, of course. Political opinion is, was clearly found here. Political opinion is surely found when there was persecution as retaliation for investigating or politicizing or publicizing corruption by a political figure. Okay, now if we were to agree with you, as I know we've not consulted prior to this time, so I have to say on that point I am inclined to agree with you. Has the mistreatment he suffered risen to the level of persecution? The BIA says no. Correct, and in the Hu case, the BIA did not reach that decision, so the Ninth Circuit didn't rule on that. However, in this case, I do find there's clear enough information on the record. And to be specific, Mr. Wong was beaten. Then he was detained for 14 days in a Chinese detention facility. And the only country condition we have was submitted by the government in this case, showing what, intimating what those conditions would be in jail. Specifically on page 000415 of the certified administrative record, you would find that challenges to the Communist Party's political authority are often dealt with harshly and without due process. But the question is whether this was harsh enough. Yes, in fact. So what bad things happened to him? On the record, they didn't go into it. If we had to send it back, you'd find out he was beaten with electric batons and tortured. Unfortunately, that's not on the record. So why isn't it in the record? Unfortunately, the gentleman that Mr. Wong had hired was disbarred or resigned with pending charges from the California bar just days before the individual hearing. The new attorney who took it over never asked, just got it on the record that he was in detention for 14 days and moved on. Now, we have testimony from Mr. Wong that he was beaten, is that right, for about 10 minutes? Correct. And we have testimony that he was instructed to report it to police weekly. He was fined. I'm trying to figure out what we have in the record as to what bad happened to him. He also was, in order to be released, he had to give up his rights to organize again, his rights to make any sort of trouble, his political rights, essentially. And his land was eventually confiscated even after he paid the fees. And is that in the record that his land was taken? Yes, yes, Your Honor. Indeed, it is there. And there's one more question I have, and that is the IJ found him incredible. The BIA did not reach that question. Correct. If we were to agree with you, number one, that this was ill treatment on account of a protected ground, and number two, that it rose to the level of persecution, do we have to remand under Ventura for a credibility finding by the BIA? No, I don't believe so. For example, I think the record is clear enough in the Who case, which is almost exactly on point. The BIA had not argued that. But in this case, the BIA did argue insufficient past persecution. But they cite three case laws that are really not relevant. For example, if you'd like me to go through them, I can. No, this is a different question. This is Ventura. Are you familiar with that case? Not in this. I wasn't planning to use it in this. Well, Ventura, in general terms, tells us that if the BIA has not decided the question, and that that question may be dispositive, we need to send it back to the BIA for a decision on that question. And I'm trying to decide whether we need a Ventura remand with respect to credibility if we agree with you as to protected ground and level of mistreatment. Well, as I was saying, in the Who case, they argued that because the BIA didn't treat the past persecution. But in this case, Mr. Wong's case, they did deny based on past persecution in their second BIA decision. No, I understand that. So, can I clarify your argument for a moment? Assume that we agree with you that Who v. Holder is applicable and there's imputed political opinion here. Are you saying that based on the record that we have right now, it is equivalent to where he has demonstrated sufficient evidence to show past persecution? There may be more there that through counsel didn't bring out, but this record alone is sufficient to demonstrate past persecution? Or are you saying that we somehow have to send it back for additional evidence to be presented? I'm saying the record is clear enough, included with the country conditions, that there was past persecution. And even if you were not to find the record is clear enough, or it doesn't rise to the level of past persecution, you go to well-founded fear, because past persecution is just to create a presumption that there would be a well-founded fear upon return. Now, the BIA did speak to this in the second decision from the BIA, saying that they didn't find well-founded fear. However, we have on the record that another vegetable farmer was detained for two years, and other fruit farmers who engaged in the same type of political public protest were sentenced for two years and three years. So I think we have on the record what would happen. We have on the record that the police consistently came back and asked where this man is, and that he report, and we're going to take away his land, which they did. He'll have to beg for mercy. He'll never have another meal again. So I think it's there. He's been deprived of his income, even though he paid the fine. They've confiscated his land. He has no means to support his family. So I think there is clear record for past persecution. Even if you don't reach that, there's a well-founded fear. Okay. Yeah. Now, why don't we hear from the government, and you may have some time to respond. Thank you. Good morning, Your Honors. Joseph O'Connell on behalf of the Respondent, the Attorney General, Eric Holder. The government will stipulate that Mr. Wong's case is controlled by Whoeve Holder, the case noted by Petitioner's Counsel. Whoe is intervening precedent that was issued after the Board's decision, the Board's second decision in this case. Again, the government concedes that the facts are similar to the case at Barr, at the very least. If the court disagrees with the past persecution finding, it should remand to the agency to address the applicability of Whoe to this case. However, there's an alternative. Wait a minute. What do you mean by that? I mean, it seems to me, if Mr. Wong is credible, and if this treatment rises to the level of persecution, there's nothing to remand for. Well, it needs to be remanded to address Whoe and to address the past persecution finding. But again, there's a past... No, no, no. Wait a minute. What do you mean, to address Whoe? Well, to address the Board, again, in Ventura, the Board needs to apply the court's decision in Whoe to Mr. Wong's case in the first instance. Well, didn't you just say this case is controlled by Whoe? Ostensibly, yes. The government believes, the Department of Justice believes that this case is ostensibly controlled by Whoe. So we're not going to... If you're making that concession, why should we send it back to the Board? The Board actually needs to address it in the first instance. I don't believe it's actually defensible under the court's decision in Whoe. But again, the agency needs to decide the applicability of that case. However, the important thing here is the past persecution finding. There's an alternative holding in this case that is potentially dispositive in the entire asylum claim here. Now, again, with regard to the alternative finding, the past persecution finding, the government believes that the court should still deny the petition for review because the agency concluded the harm suffered by Mr. Wong was not severe enough to constitute persecution. Yes, so tell me why that's not severe enough. Because we do, even in the record as it now stands... As it stands, yes. He's engaged in the protest. He's engaged in a protest. Assuming his credibility... Assuming his credibility, yes. In the process of protesting, the authorities show up and start beating people up. Yes. Potentially, at least as I read the evidence, him included. He was included in that. So he says they started beating us up. Right. He is then incarcerated. He's incarcerated for two weeks. While confined, they then beat him up for, quote, 10 minutes. Correct. They then fine him. He was fined 5,000 yuan to be released on bond, yes. They then take away his land. That is not conceded by the government in this case. There's testimony during the removal hearing that Mr. Wong actually paid the fine, the additional fine, the additional taxes or whatever it was, $300 a year. And he went back to his land and started farming again until he relocated to his mother. So we may want to hear you point us to the record where there's evidence that his land is taken away. There's conflicting evidence in the record with regard to whether or not he actually went back to his land. What do you mean? Well, maybe you should point us to what you view as the conflicting evidence. The conflicting evidence. I can find it in the record. That would be nice. Okay. Would you please do that? I will. I will. Can I continue with the past prosecution? Well, why don't we look at it right now? Okay. If you give me one minute, I'll find it. Yeah. Well, you can help him out if you can find it faster. So what page are you saying, so I can look at it at the same time? 335, okay. It says the claim is confiscated at that point, but there are 11, of course, in the record I can follow up with that. You know, if you were going to argue no persecution, you should have had this at your fingertips. Do you allude to the conflicting? Your Honor, I can just submit a document after the hearing today, I think. Well, why don't you stand up and finish the argument, and if we want you to submit additional, we'll send out an order after the argument. Your Honor, the Board relied on two aspects of the past persecution in finding that it was not severe enough to constitute persecution. The first part was that this was an isolated incident. It all happened in one incident. And the second is that Mr. Wong testified that he didn't require any medical treatment as a result of his physical assault. Now, the Court has emphasized in previous cases that the severity and frequency of the harm was not severe enough to constitute persecution. Now, the Board relied on these two factors in finding that Mr. Wong's physical assault and detention were not sufficiently severe enough to constitute past persecution. Well, you're focusing only on what happened to him during the detention period, but I think we also have to look at what happened after his release. He was ordered to report weekly, and they started looking for him when he failed to show up. Shouldn't we consider all of those facts as well in determining whether this conduct or this mistreatment is tantamount to past persecution? Yes, but there's countervailing evidence as well. There's evidence that he actually relocated to his mother-in-law's house, and he went to the police, and they gave him permission to travel by train ten hours to stay with his mother-in-law for two months. Not only that, the State Department report in the record suggests that the Chinese government will still deny passports to citizens based on political reasons. Now, Mr. Wong, Mr. Wong went two months after his arrest, he went to Beijing, he issued a he requested a passport in his own name, he issued his passport, and they let him travel to the United States voluntarily. Now, there's no evidence, there's insufficient evidence that the Chinese government is actually actively searching for Mr. Wong. Well, you say there's countervailing evidence in the record. Let's say that there's suggestions going both ways. If we presume that he's credible, then what he testified to has to be given the benefit of the doubt. That's correct. Is that right? He was deemed credible, and you have to give him the benefit of the doubt. However, based on the standard of review in this case, the evidence has to compel reversal of the agency's decision. The evidence has to compel a contrary conclusion. And because there's countervailing evidence in the record, because there's evidence supporting the board's decision in this case, I would argue that the evidence record does not compel reversal of the board's decision in this case. Now, just to briefly summarize, again, the government is conceding that this case is, the nexus finding is ostensibly controlled by Hugh Beholder. However, because the board made an alternative finding in this case with regard to past persecution, the court should still nonetheless deny the petition for review because Mr. Wong has not established eligibility for asylum. Once there's any more questions, I'll try and find that portion of the record that I was trying to cite. Okay. Thank you. Again, with past persecution, if we look at the record at 308, you'll find that Mr. Wong was asked to testify. He was asked during the removal proceedings, now, could you go back to your normal life after you were released? No, I can't. The way they treated me, they were so unfair, and they were violating the law, and I feel, still feel a lot of resentment, so I wanted to go and appeal further. So he did intimate that things happened. It's unfortunate his counsel didn't ask, but again, as the court pointed out, he had to pay a fine. He still had to pay, they bullied him into paying the extra money. This wasn't an isolated incident. The farmers that we're talking about, the vegetable farmers, had for years, up to seven years prior to this, withstood tax after tax, abuse after abuse because of the corruption of the local officials, charging more so they could have lavish lifestyles. So this, the land contract was started in 1998. This happened in 2005. Seven years of this abuse before they finally couldn't take it anymore. And then, not requiring medical treatment, that's not a requirement under the Ninth Circuit. Someone has to have medical treatment. I think if any of us would be subjected to 14 days in detention in a Chinese detention facility, I think we could find that there was depravity there and things that one finds offensive. The fact that Mr. Wong is a farmer and had a good constitution, was humble about his ability to withstand that, just speaks for his character, as opposed to a legal matter of past persecution. Also, I think trial counsels, excuse me, government counsel is wrong. The passport was actually issued on August 22nd, 2002, which is three years before this happened, because as testified on the record, Mr. Wong was planning to go to Korea because of a certain seed program. So he did go to Beijing to get the passport, but he had paid bribes and secured permission to go for three months. So he left, say, around the end of January, February. He was there for three months, then he fled to the United States. Now, I just want to make sure I've got this case straight. Yes. My understanding of this case is that the immigration judge found him not credible. Correct. The BIA did not reach that question, and on the assumption of his credibility, said no protected ground, and even if it had been a protected ground, insufficient harm. Correct? Yes, but in the second decision by the BIA, they did discuss past persecution and say they didn't find it, and list three cases which I believe are irrelevant. I can go that point by point if you would like. For example, they talked about... When you say the second one, is that the one on October 22, 2009? Correct. Yes. So if you look at that, that's on a certified administrative record, page five. Additionally, even presuming that the respondent demonstrated a valid nexus in this case, we agree with the immigration judge that his mistreatment does not rise to the level of persecution as contemplated by the act. Right. Yeah, that's what I was referring to. So they've said, listen, even assuming nexus, that is to say protected ground, even assuming selling the truth, what happened to him is not bad enough. Correct. But what I'm driving at is because BIA didn't reach the question as to whether or not he was credible, and the only finding by anybody in the administration is that he's not credible, I think we've got to send it back to the BIA for a determination as to whether or not he was credible, at which point I guess we get to decide whether there's sufficient evidence on the record to support that conclusion. Well, there is precedent for this in Cotova v. Gonzalez where, and that's cited in the Who v. Holder case, where it says the BIA decision is silent on credibility, despite the IJ's explicit adverse credibility finding. So we may assume that the BIA found Who to be credible. So if you look back at the Who case, you'll see that that was also resolved there. Oh, okay. Well, I'll check on that point, then. What page are you on, on Who? On Who v. Holder, referring to the... I want to get the context of that. Sure. Page, well, I have it as 9568. The BIA's decision is silent on the issue of credibility, despite the IJ's explicit... No, no, no, wait a minute. I want to read along with you. Oh, sorry. I've got 652, F3rd, 1011. Is that the correct... 1016. All right, it's under Part 2, Standard and Scope of Review. I see where you're... It's the second paragraph, right? BIA decision. The paragraph just above Part 3, Discussion. Right. Go ahead. Okay, yep. Yep. So I believe I read it into the record. So, I mean, this gentleman left China in 2005 when his son was six years old. He's now 14. So having this remanded back, when I think the record is already clear on past persecution, and even if not, you could find well-founded fear of persecution, assuming that he's credible, as the BIA did. So he could be reunited with his family much faster. In my experience, it takes years for these cases to go back down to the BIA and then back down for a further record before the IJ. And meanwhile, I think a very strong case has been dismissed due to a lack of clarity of the record, which I think, if you really look, it is there. Should I give you a minute or...? No, I've got... Perhaps I can address this a little out of order to the government. On the question of credibility, I'm looking at your red brief. I don't see a request for a remand under Ventura for adverse credibility finding by BIA. The government has the credibility foundation. Okay, got it. So you assume credibility. Okay, good. That takes care of my Ventura issue, then. Okay. And just as a side note, I was looking at section, page 333, the portion where I was looking for... 333. ...cross-examination. The government counsel says, now, as I understand it, you were locked out when you filed a claim. Is that correct? And Mr. Wong says, no, this is, I don't know, 334. He says, I was paying. I could not pay it in time. But after I was released, I did pay them all together. Right. So essentially, he was not locked out of his claim. But if you follow the conversation, then later he was. In other words, a few months later. Because on page 335, answering the question, after April, basically after May, when the police was, quote, unquote, coming to your home, did they still, were they, were they still taking vegetables from your family that my land was confiscated at that time? Okay. At least, at least we've got, now we understand the evidence which both of you are referring. And if the government concedes credibility, then... Okay. There's not an issue. All right. Thank you. Thank you. Sorry. Can I ask, I'd like to ask the government counsel a question about the statement you just made about... Of course. Now, I want to make sure what you're saying. Are you saying that the government's position now is that everybody should assume that one is credible? Yes. The board deemed him credible. His testimony is deemed credible. However, the board decided it based on the facts, as they are credible. So credibility is absolutely not an issue here. The IJ decided credibility, but the board did not address that. So your position is we don't have to remand for a finding on credibility? That's correct, Your Honor. All right. Thank you. Okay. Thank you very much. Thank both sides for their arguments. The case of Wong v. Holder now submitted for decision.
judges: Tashima, Fletcher, Nguyen